IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 5, 2018

IN RE ETHAN M.[1]

**Appeal from the Chancery Court for Hamblen County**
**No. 2016-CV-598     Douglas T. Jenkins, Chancellor**

_____

No. E2018-00472-COA-R3-PT

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment for failure to support and to visit. The court further found that termination was in the best interest of the child. We reverse the trial court on its finding that the mother abandoned the child by failing to visit. We affirm the trial court on all other rulings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Gerald T. Eidson, Rogersville, Tennessee, for the appellant, Cindy M.

Crystal G. Jessee, Greeneville, Tennessee, for the appellees, Mike S. and Mitzi S.

**OPINION**

**I.     BACKGROUND**

Ethan M. ("the Child") was born to Cindy M. ("Mother") and Joshua M. ("Father") in June 2006.[2] The Child primarily resided with Mother; however, Mother lived near the maternal grandparents, Mike and Mitzi S. ("Grandparents"), who provided

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

[2] Father's parental rights were also terminated; however, he is not a party to this appeal.

support and assistance when needed. Mother often left the Child with Grandparents for extended periods of time without providing notice of her absence. Specifically, Mother left without warning in October 2014 and did not return until December 2014. She left the Child again in February 2015 and never returned. She stole Grandparents' televisions upon her departure. The record reflects that Mother had issues with substance abuse.

Grandparents obtained legal custody of the Child pursuant to an order filed on April 6, 2016. Mother was permitted one hour of visitation per week at some point; however, she never participated in visitation or remitted child support. The court suspended her visitation on August 17, 2016. Grandparents filed a petition for termination and adoption on December 9, 2016, alleging abandonment for failure to visit and to support, wanton disregard for the Child's welfare, and failure to manifest an ability and willingness to assume custody of the Child as statutory grounds of termination.

The case proceeded to a hearing on the termination petition, at which Mother conceded that she left the Child with Grandparents in February 2015.[3] She explained that her father told her to leave and "get clean" but that he knew exactly where she was living. She claimed that she even spoke with the Child via telephone every day for a month until her father quit paying for her cellular telephone. However, she admitted that she later overdosed and was put on a ventilator in April 2015. She further admitted to stealing from her parents and receiving charges of theft and driving on a revoked license, for which she received probation. She was arrested in February 2017 for violation of probation because she failed to maintain contact with her probation officer. She claimed that she was no longer on probation and has been sober for approximately two years.

Mother admitted that she did not remit child support during the relevant time period but claimed that she was unemployed and reliant upon her friends due to her substance abuse. She conceded that she was physically able to work but chose not to because the urge to buy pills with her income would have been "overwhelming." She later obtained employment in June 2017, earning $7.25 per hour. She admitted that she did not remit support even after obtaining employment. She provided that she could remit support but that she did not understand the process and had never received a court order directing her to remit support.

Relative to visitation, Mother admitted that she had not participated in visitation in the year prior to the court's suspension order on August 17, 2016. She claimed that Grandparents never responded to her requests for visitation. She stated that she sent text messages and left voicemails but that when she would get an answer or a return, they advised her that they would "leave [visitation] up to [the Child]." She did not submit any

---

[3] She denied also leaving the Child with them from October through December 2014.

proof of her attempts to contact them. She claimed that her mother later advised her not to speak with the Child because she had "messed him up enough." She provided that she did see the Child on occasion when he was with Father and that she also spoke to him by telephone on occasion but that he told her not to tell Grandparents that they spoke. She explained,

> I didn't really know what to do. I mean – and I know that's no excuse, but I didn't know what to do. I mean, yeah, maybe I should have went and beat on their door, but at the same time, you know, I called and called but obviously that wasn't good enough.

Mother stated that she is currently living with a friend and that they split living expenses between them. She provided that she did not want to regain custody of the Child but that she simply wanted to foster a relationship with him. She agreed that he was well taken care of in her absence and that his home with them is his "safe haven."

Grandparents testified that Mother never contacted them to arrange visitation, despite a court order providing her with one hour per week of visitation. Grandmother testified that Mother contacted her "[m]aybe once" and that she simply sent a text message wishing the Child a happy birthday. Grandfather stated that Mother also left the Child with them from October through December 2014 and that he told Mother not to leave the Child again. He claimed that Mother has only seen the Child when the Child was visiting with Father on a few occasions. He asserted that Mother often stole from them but that he did not pursue criminal charges. He stated that he also supported her financially until he could no longer afford to provide for her. He asserted that Mother neither provided nor offered payments of support for the Child.

Grandfather testified that he has financially supported the Child since at least December 2014. He has also facilitated the Child's involvement in extracurricular activities. He stated that he would continue to support and care for the Child.

The trial court granted the termination petition, sustaining two of the four grounds alleged, namely abandonment for failure to visit and to remit support. The court further found that termination was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

B.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i).

C.      Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

(1)    [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2)    [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that

- 4 -

termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.   DISCUSSION

Mother does not appeal the statutory grounds supporting the court's termination decision.  In such cases, our Supreme Court offered the following instruction:

> [I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.

*In re Carrington H.*, 483 S.W.3d at 525-26 (internal citation and footnote omitted). Accordingly, we will review each ground in turn.

### A. & B.

In terminating Mother's parental rights based upon the statutory ground of abandonment for failure to visit and to remit support, the court considered the four months preceding December 9, 2016, the filing date of the termination petition.  The relevant time period was August 9, 2016, through December 8, 2016.[4]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child."  Tenn. Code Ann. § 36-1-102(1)(D).[5]  Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means."  Tenn. Code Ann. § 36-1-102(1)(B).  A parent's willful failure to visit "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation."  Tenn. Code Ann. § 36-1-102(1)(E).  Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child."  Tenn. Code Ann. § 36-1-102(1)(C).

---

[4] "The applicable four month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014).

[5] The legislature has since amended Section 36-1-102(1)(A), effective July 1, 2018, to place the burden upon the parent to establish his or her lack of willfulness as an affirmative defense to the statutory ground of abandonment.  The amendment does not apply to this case, filed in December 2016.

This court has consistently held that the term willfulness as it applies to a party's failure to visit or remit support must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

1.

Mother claims that her requests to visit during the pertinent time period were denied. The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted) (upholding termination when the father did not take court action to secure visitation like the parents in *In re A.M.H.*).

In sustaining this ground of termination, the court stated,

> Mother has abandoned and willfully failed to visit [the Child] for at least the four (4) months preceding the hearing. The Court also finds that there was nothing impeding [Mother's] right to visit, and by [Mother's] own admission, she has a good relationship with her Father, and he has went out of [his] way to help her. The Court believes that if [Mother] desired to visit, that she could have done so by reaching out to the Father, and she did not make any attempt.

However, the record reflects that visitation was suspended pursuant to a court order on August 17, 2016, precluding any visitation during the majority of the pertinent time period. Accordingly, we reverse the trial court on its ruling that Mother abandoned the Child by failing to visit. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

The record reflects that Mother failed to remit support during the requisite time period. She claimed at the hearing that there was no support order and that her ability to support was hampered by her substance abuse issues during the relevant time period. "A parent's obligation to support his or her child exists regardless of a court order requiring the parent to pay support." *In re Jacob M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013) (citation omitted). Furthermore, "[e]very parent who is eighteen (18) years of age or older is *presumed* to have knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H) (emphasis added).

"'Failure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Here, Mother admitted her physical ability to work during the relevant time period and that she later obtained employment after the relevant time period but still failed to provide any financial support. Accordingly, we conclude that there was clear and convincing evidence to establish that Mother abandoned the Child by failing to remit support during the requisite time period.

C.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies

for such duration of time that lasting adjustment does not reasonably appear possible;[6]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the

---

[6] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Despite Mother's progress since the time of her departure, she had not made an adjustment of circumstances necessary for the Child's return or maintained regular visitation with him, despite a court order providing her with visitation until her visitation was suspended in August 2016. Tenn. Code Ann. § 36-1-113(i)(1), (3). The record reflects that she also failed to maintain a meaningful relationship with him during her absence. Tenn. Code Ann. § 36-1-113(i)(4). The Child has resided with Grandparents since February 2015. Mother even admitted that she did not wish to regain custody and only wanted to reestablish her relationship with him. A change of caretakers at this point in the Child's life would be detrimental to his emotional condition. Tenn. Code Ann. § 36-1-113(i)(5). Mother has also failed to remit child support or submit any kind of assistance for the Child even after obtaining employment. Tenn. Code Ann. § 36-1-113(i)(9). The Child has been with Grandparents for almost four years now and should be allowed to achieve permanency and stability in his current home. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Child. We affirm the trial court.

## V.    CONCLUSION

The judgment of the trial court is reversed as to the finding of abandonment for failure to visit. The trial court is affirmed on all other grounds. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Cindy M.

_____
JOHN W. McCLARTY, JUDGE